**IN THE UNITED STATES DISTRICT COURT**
                    **WESTERN DISTRICT OF ARKANSAS**
                          **FAYETTEVILLE DIVISION**

**UNITED STATES OF AMERICA**                                                           **PLAINTIFF**

        **v.**     **Criminal Case No. 07-50010**

**MICHAEL FORTINO**                                                                    **DEFENDANT**

## O R D E R

On the 9th day of October, 2007, came on for hearing the government's **Motion To Vacate And Reconsider Imposition Of Sentence** (document #18), and from said motion, the response thereto, and the evidence and arguments adduced at a hearing this date, the Court finds and orders as follows:

1. On October 2, 2007, having pled guilty to Knowing Transportation of Child Pornography in Interstate and Foreign Commerce by Computer, in violation of **18 U.S.C. §§2252(a)(1)** and **(b)(1)** and **2256(2)**, defendant appeared for sentencing.

In connection with the sentencing, a Presentence Investigation Report ("PIR") was prepared on May 29, 2007, and revised on July 13, 2007, by Donna Brown, U.S. Probation Officer. Relevant to the issues now before the Court, the PIR noted that "[t]he probation officer has no information that suggests the defendant impeded or obstructed justice" (¶26) and that defendant "admitted his conduct," was receiving counseling, and "states he is very sorry for his inappropriate behavior on the internet," for all of which "an adjustment for acceptance is recommended" (¶27). Brown recommended two points for acceptance of responsibility,

with an additional one if the government so moved.

Also in connection with sentencing, the government filed a motion for downward departure, seeking a 4-level departure, for "full, truthful and substantial information in an investigation of criminal activity in another federal judicial district."  The Court noted at sentencing that a 4-level departure was "a bit unusual" and the government's attorney described it as "a very generous downward departure motion . . . in this district, this degree of departure is very rarely, if ever, requested."  The request was based on defendant's assistance in prosecuting a Judge Kline of California on a child exploitation charge, allegedly on the basis of information defendant had obtained from Judge Kline while both were in a treatment center.  This motion was granted, resulting in a substantial reduction of the guideline sentence range for defendant.

Defendant also submitted various letters.  One was a letter defendant had supposedly sent to the parents of one of his child victims, along with an e-mail purportedly in response to that letter.  One was a letter purported to be from the mother of defendant's illegitimate child.

In the letter to the parents of the child victim, the Neitsches, defendant apologized profusely for his conduct, assured them that their "family was never placed in harm's way," and claimed that he had "found my moral compass and returned to a life

of honesty and stability." The e-mail "response" stated that the Neitsches "were moved" by defendant's "sincerity"; "felt" his "remorse"; "believed" that he had "found repentance"; forgave him; and would "pray that you are given every consideration for leniency."

The letter which purported to be from Candis Robinette, the mother of defendant's child, was even more supportive. It stated that defendant had been "honest and upfront" with her; that from the beginning of their relationship she had known defendant's "marriage was faltering"; that he "admitted to me what he had done in the past" and "took full responsibility for his inappropriate behavior"; that she had "never witnessed anything in Michael that would suggest instability or inappropriate behavior"; that she and her family supported defendant "because he is a good and decent man"; that defendant "accepted full responsibility for his actions" and she believed he was "truly remorseful"; and that she and her family "pray to God that your court consider giving Michael leniency."

    2. Based on what was presented at sentencing, including the foregoing documents, the Court sentenced defendant at the low end of the guideline range as determined after the adjustments described in ¶1 were made. This resulted in a sentence of 135 months imprisonment, supervised release for a period of 20 years, a fine of $10,000.00, and special assessment of $100.00.

3.  Immediately following sentencing, Assistant United States Attorney Chris Plumlee was contacted by Robinette, who called to find out what sentence defendant had received.  It came up during the telephone conversation that the Court had a letter purporting to be from Robinette in support of defendant, at which Robinette expressed surprise, stating that she had written no such letter.

An investigation quickly followed, in which the government interviewed not only Robinette, but also Richard Neitsch.  Like Robinette, Neitsch stated that he had not written the e-mail purporting to be from him in support of defendant.

These discoveries prompted the government to file the motion now under consideration.

3.  The government called Robinette as a witness.  She testified that she did not write the letter purportedly written by her; that it was "full of lies"; that it misspelled her name and gave an incorrect birthdate for the child she had by defendant; and that she believed it had been written by defendant because the birthdate given was the one he had erroneously used before.  She testified that neither she nor her family sought leniency for defendant, and that he had not accepted responsibility for -- or even been honest with her about -- what he had done, telling her that he was in trouble only for "one thumbnail image of a teen." She further testified that defendant had asked her to write a

letter in his behalf, and she had refused, but had agreed that if he wrote one she approved, she would sign it. She had not seen the letter submitted as hers until after the sentencing.

The government also called Michael Parks, a detective with the Fayetteville, Arkansas, Police Department, who conducts special investigations in the area of child exploitation and computer forensics. Parks has been involved in this case since its inception. He contacted the Neitsches (who live in Pennsylvania) by phone, and also arranged for them to be interviewed by an ICE agent. The Neitsches informed Parks that defendant had asked them for a letter in his favor to use at his sentencing, and that they had declined. They told Parks that they did not write the e-mail submitted by defendant and purporting to be from Richard Neitsch.

Finally, the government Probation Officer Brown, who testified that she had sought victim impact statements from the Neitsches and another family, but her calls were not returned. She interviewed defendant, who did not admit to her that he had a child, and who gave an incorrect date for his marriage. Brown testified that she received the purported Neitsch e-mail in a packet of support letters on Friday before the Tuesday sentencing, and received the Robinette letter by facsimile on Monday before sentencing, leaving little time to investigate them. She further testified that if she had known the Robinette letter and the e-

mail from Neitsch were fabricated, she would have considered recommending a sentence enhancement for obstruction of justice[1], and would probably not have recommended that defendant be given two points for acceptance of responsibility[2]. She would also have viewed with skepticism defendant's statements about his financial condition, which were the basis for a reduced fine in this matter.

    4.   Defendant did not attempt to rebut any of the foregoing testimony, resting his case entirely on a challenge to the Court's jurisdiction to grant the motion. **F.R.Cr.P. 35(a)** provides that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Defendant contends that **Rule 35** is limited by its terms to "mathematical issues" and "incorrect calculations," not "discretionary fact-finding," which is what he contends the Court is now asked to conduct.

    The government reads **Rule 35(a)** more broadly, to include situations such as the one here presented, while acknowledging that it is a limited avenue for the correction of sentences "in which an obvious error or mistake has occurred" and is not

---

[1] Sentencing Guideline §3C1.1 provides for an increase in offense level by two levels for willfully attempting to obstruct or impede the administration of justice with respect to, among other things, sentencing for the offense of conviction, if the obstructive conduct is related to the offense of conviction or any relevant conduct. One example of such conduct cited in the Application Notes is producing a false or counterfeit document in a judicial proceeding. Another is "providing materially false information to a judge.

[2] The Application Notes to Sentencing Guideline 3E1.1 provide that "[c]onduct resulting in an enhancement under §3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."

intended "to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence." **U.S. v. Sadler**, **234 F.3d 368 (8th Cir. 2000).** The government points out that the error here was induced by the fraudulent conduct of the defendant in submitting falsified letters of support for leniency in sentencing and for acceptance of responsibility.

5. The Court acknowledges the authority of **Sadler**, but agrees with the government that the error which tainted defendant's sentencing -- error of his own creation -- must be corrected if justice is to be served. The Court also finds that such error falls within the scope of the "other clear error" provision of **Rule 35(a),** as part of its basis for sentencing defendant was based on incorrect -- i.e., erroneous -- information.

To the extent that the matter does not fall within the scope of **Rule 35(a),** the Court finds that defendant's sentence should be vacated and he should be resentenced in light of the true facts on the authority of **U.S. v. Bishop**, **774 F.2d 771 (7th Cir. 1985)** and the Supreme Court precedent cited and analyzed therein.

In **Bishop,** a defendant intentionally misrepresented the status of his sentencing on a state offense in order to secure more favorable sentencing on a federal offense. When the district

court learned of the misrepresentation, it vacated Bishop's favorable federal sentence and resentenced him.  The Seventh Circuit, after considering whether the district court had jurisdiction to modify Bishop's sentence, and whether the modification constituted double jeopardy, affirmed the district court.

The jurisdictional issue in **Bishop** was resolved outside the parameters of **Rule 35.**  The Seventh Circuit noted that the district court had "inherent power to correct a judgment procured through fraud," under the holding of **Hazel-Atlas Glass Co. v. Hartford Empire Co.**, **322 U.S. 238 (1944),** stating that

> [a] court must be able to sentence a defendant upon accurate information and when the sentence imposed is based upon fraudulent information provided by the defendant, the court has the inherent power to correct that sentence.

Although **Hazel-Atlas Glass** is an old case, its holding is still sound.  It was specifically reaffirmed by the Supreme Court in **Chambers v. NASCO, Inc.**, **501 U.S. 32 (1991),** wherein the Court noted that inherent powers

> allow[] a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. This "historic power of equity to set aside fraudulently begotten judgments" is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."

**501 U.S. at 44** (internal citations omitted).

-8-

In the case at bar, the Court finds, from the evidence submitted in connection with the pending motion, that the defendant supplied the Court and the government with fraudulent documents, i.e., the purported Neitsch e-mail and the purported Robinette letter. In addition, the Court finds that this fraudulent information had an effect upon the determination of defendant's sentence, in at least the following ways:

* defendant was given credit for acceptance of responsibility, whereas it now appears that he did not accept such responsibility, having submitted falsified documents in order to lessen the punishment he might otherwise bear for his crime;
* had the true facts been known, defendant might well have received an enhancement for obstruction of justice;
* the Court might well view defendant's financial situation differently, given his demonstrated lack of honesty; and
* the Court might also determine that a longer period of supervised release is appropriate for the same reason.

While the Court is not prepared at this point to pronounce sentence in light of what it now knows, it finds that defendant's sentence should be vacated, and he should be sentenced in light of his fraud. It will, therefore, grant the government's Motion; direct that Probation Officer Brown make such investigation and

revision as are necessary to the Presentence Investigation Report in light of this Order; and reconvene Court at 1:30 p.m. on October 12, 2007, to pronounce defendant's sentence in light of the true facts.

**IT IS THEREFORE ORDERED** that the government's **Motion To Vacate And Reconsider Imposition Of Sentence** (document #18) is **granted**.

**IT IS FURTHER ORDERED** that Probation Officer Brown make such investigation and revision as are necessary to the Presentence Investigation Report, in light of this Order.

**IT IS FURTHER ORDERED** that resentencing in this matter will take place at 1:30 p.m. on October 12, 2007, in the fifth-floor courtroom of the John Paul Hammerschmidt Federal Building, Fayetteville, Arkansas.

**IT IS SO ORDERED**, this 10th day of October, 2007.

                                                                           /s/ Jimm Larry Hendren
                                                                           **JIMM LARRY HENDREN**
                                                                           **UNITED STATES DISTRICT JUDGE**